UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - -  x
UNITED STATES OF AMERICA            :
                                    :
        - v -                       :
                                    :        **15 Cr. 254 (GHW)**
**MARCOS MOTA,**                    **:**
                                    :
            Defendant.              :
- - - - - - - - - - - - - - - -  x


MEMORANDUM OF LAW IN SUPPORT OF

DEFENDANT MARCOS MOTA'S PRETRIAL MOTION


                        Federal Defenders of New York
                        Daniel Habib, Esq.
                        Sabrina Shroff, Esq.
                        Attorneys for Defendant
                            **Marcos Mota**
                        52 Duane Street - 10th Floor
                        New York, NY 10007
                        Tel.: (212) 417-8769



TO:      PREET BHARARA, ESQ.
         United States Attorney
         Southern District of New York
         1 St. Andrew's Plaza
         New York, NY 10007
Attn:    **AUSA Max Nicholas, Esq.**

**PRELIMINARY STATEMENT**

Marcos Mota is charged by indictment with one count of distributing and possessing with intent to distribute one kilogram or more of heroin, and one count of conspiring to do the same, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846.  He has pleaded not guilty.  Mr. Mota respectfully submits this Memorandum of Law in support of his motion to suppress physical evidence (in particular, a black plastic bag containing about one kilogram of heroin) recovered during a search of a livery van in which Mr. Mota was a passenger, as well as an inculpatory post-arrest statement.

The Fourth Amendment requires suppression of the physical evidence recovered from the van as the product of an unreasonable warrantless search.  See Bond v. United States, 529 U.S. 334, 338-39 (2000) (law enforcement officer's physical manipulation of exterior of bus passenger's carry-on bag violated Fourth Amendment).  No exception to the warrant requirement applies.  And Mr. Mota's post-arrest statement must be suppressed as fruit of the unlawful search.

**BACKGROUND**

On January 29, 2015, Marcos Mota boarded a 14-passenger livery van at the office of Five Star Express, LLC at 1271 St. Nicholas Avenue in the Washington Heights neighborhood of

1

Manhattan.   The van was bound for Lawrence, Massachusetts.   Exh.
A (Mota Decl.) ¶ 2; Habib Decl. ¶¶ 9-10.   Five Stars operates
six trips per day from New York to New England, and six trips
per day from New England to New York.   Exh. I (Five Stars
business card); Habib Decl. ¶ 11.   The logo "809 Express"
appeared on the van's windshield and on windows on its left and
right sides.   Habib Decl. ¶ 10.[1]   There were about five other
passengers on board, as well as the van's driver.   Exh. B
(Arrest Report), at MOTA_00010; Exh. F (Complaint) ¶ 9(c).   Mr.
Mota was traveling with a black duffel bag containing various
personal effects and an opaque black plastic bag containing a
heat sealed package of about one kilogram of heroin.   Exh. A
¶ 3; Exh. B, at MOTA_00011; Exh. E (Evidence & Property
Voucher), at MOTA_00038 to MOTA_00039.   Mr. Mota was seated
alone in the fourth (that is, the last) row of passenger seats
in the van.   Exh. A ¶ 3; Exh. B, at MOTA_00010; Exh. F ¶ 9(c);
Habib Decl. ¶ 10.   Mr. Mota's duffel bag was on the seat next to
him and his plastic bag, which was closed, was under the seat in
front of him.   Exh. A ¶ 3; Exh. F ¶ 9(f).

---

[1] 809 is an area code for the Dominican Republic, and Lawrence
"has the most concentrated Latino population in New England,
with one of the highest percentages of Dominican immigrants in
the United States," James Sullivan, What Is It Like To Live In
Lawrence?, Boston Globe (Jan. 17, 2015), available at
http://bit.ly/1Iz9TL4.

Around 1:30 p.m., shortly after the van left Manhattan, a
Westchester County Police Officer saw the van traveling
northbound on the Hutchinson River Parkway, near I-684.   Exh. F
¶ 9(a) and (b).   The officer was "aware that livery vans
operated by companies including Five Star [sic] Express ... have
been used by drug couriers to carry controlled substances and
the proceeds of unlawful transactions involving controlled
substances across state lines," in particular, "from New York,
New York to locations in Massachusetts."   Exh. F ¶ 8.   According
to his report, the officer "observed a livery van ... with its
rear tail light broken" and stopped the van.   Exh. B, at
MOTA_00010.   The officer is said to have opened the rear doors
of the van "for safety purposes" and "observed no items or bags
on the floor of the vehicle at that time."   Exh. G (DEA Report
of Investigation), at MOTA_00022; see also Exh. F ¶ 9(c).   The
officer asked the van's driver for his license and registration
and confirmed that the van was a Five Stars van traveling from
New York to Massachusetts.   Exh. A ¶ 4; Exh. B, at MOTA_00010;
Exh. F ¶ 9(d).   While the officer was speaking with the driver,
other officers, including some from the DEA's "Group Z-11,"
arrived.   Exh. A ¶ 4; Exh. G, at MOTA_00022.

At this time, according to the officer, Mr. Mota "appeared
to be extremely nervous."   Exh. B, at MOTA_00010.   He "was
avoiding all eye contact and continuously was moving around

3

excessively." Id.  The officer "hear[d] what appeared to sound like the rumbling of a plastic bag coming from [Mr. Mota's] immediate area.  [Mr. Mota] then leaned over to his left side and almost simultaneously I heard a distinct thump sound as if something hit the floor." Id.  The officer asserts that "in fear that [Mr. Mota] was attempting to conceal a weapon or contraband, I asked all passengers to exit the van one at a time, in the [sic] attempt to investigate what had been dropped on the floor of the van." Id. at MOTA_00010 to MOTA_00011. Contrary to the officer's account, at all times during the stop, Mr. Mota behaved normally.  He did not act nervously, avoid eye contact with any of the officers, or move around in his seat. Exh. A ¶ 5.  Mr. Mota did not unzip the duffel bag or handle the plastic bag. Id.  He did not lean over to his side or drop the plastic bag on the floor of the van. Id.

In any case, once all of the passengers exited the van, the van was searched.  Exh. B, at MOTA_00011; Exh. F ¶ 9(f).  The officer saw the black plastic bag "in the immediate area of where [Mr. Mota] was sitting." Exh. B, at MOTA_00011.  The black plastic bag was "closed." Exh. F ¶ 9(f).  The officer "felt the outside of the Plastic Bag and, based on [his] experience in narcotics investigations, formed a belief that the Plastic Bag contained a brick of narcotics." Exh. F ¶ 9(g). See also Exh. B, at MOTA_00011 ("The black plastic bag was

4

slightly heavy and felt rectangular and hard to the touch, and based on my training and experience this was consistent with known methods of the packaging of narcotics."); Exh. G, at MOTA_00023 ("[The officer] retrieved the bag and felt the outside of it, believing a 'brick' of narcotics to be inside."). Thus, not until he felt the outside of the bag did the officer ascertain that the bag contained contraband.

After feeling Mr. Mota's bag, the officer opened it and found a heat sealed package that appeared to be a brick of narcotics. Exh. B, at MOTA_00011. See also Exh. F ¶ 9(h). The contents of the package field-tested positive for heroin. Exh. B, at MOTA_00011. Mr. Mota was arrested and taken to a police precinct, where he is alleged to have admitted traveling to the Bronx to pick up heroin that he planned to transport to Massachusetts. Exh. A ¶¶ 6-7; Exh. F ¶¶ 10-11. Mr. Mota's arrest occurred about 2:14 p.m. Exh. B, at MOTA_00010. He received Miranda warnings and made his inculpatory post-arrest statement about 4:25 p.m. Exh. D (Handwritten Notes), at MOTA_00027.

**ARGUMENT**

**I.   The Officer's Physical Manipulation Of Mr. Mota's Bag Violated The Fourth Amendment.**

A.   The Officer's Physical Manipulation Of The Bag Invaded Mr. Mota's Fourth Amendment-Protected Privacy Interest.

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." A traveler's personal luggage, even when stored on a public bus, is an "effect" protected by the Fourth Amendment. Bond, 529 U.S. at 336-37 (citing United States v. Place, 462 U.S. 696, 707 (1983)). A search subject to the Fourth Amendment's reasonableness requirement "occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable." Kyllo v. United States, 533 U.S. 27, 33 (2001) (citing Katz v. United States, 389 U.S. 347, 361 (1967) (Harlan, J., concurring)).

In Bond, the Supreme Court held that the physical manipulation of the exterior of a public bus passenger's carry-on bag constitutes a search. 529 U.S. at 338-39. There, during a stop of a Greyhound bus at a Border Patrol checkpoint, an agent squeezed the defendant's carry-on canvas bag, which the defendant had placed in the bus's overhead storage space. Id. at 335. The agent noticed that the bag contained a "brick-like" object, sought and received the defendant's consent to search

6

the bag, and discovered a "brick" of methamphetamine inside.
Id. at 336.  The Court determined, first, that the defendant had
manifested a subjective expectation of privacy in his bag and
its contents "by using an opaque bag" and storing it close to
his seat.  Id. at 338.  That expectation of privacy was
objectively reasonable, the Court then concluded, because a
passenger "does not expect that other passengers or bus
employees will, as a matter of course, feel [his] bag in an
exploratory manner."  Id. at 338-39.  Consequently, the agent's
search violated the Fourth Amendment and the defendant was
entitled to suppression.

       Bond is apposite.[2]  Mr. Mota was a passenger on a public
bus.  He was using an opaque bag to hold his carry-on
belongings.  See 529 U.S. at 338.  The bag was closed, as the
government acknowledges.  See, e.g., United States v. Knoll, 16
F.3d 1313, 1321 (2d Cir. 1994) (closed container "need not be
locked or fastened shut for there to be a legitimate expectation
of privacy in its contents").  Because the van had no overhead
compartment, Mr. Mota stored the bag "close at hand" in the
nearest available space, namely, the area under the seat in

---

[2] Under Bond, a lawful vehicle stop does not obviate compliance
with the Fourth Amendment as to a subsequent search of a
passenger's carry-on baggage.  Thus, even if the traffic stop in
this case was lawful (which Mr. Mota does not concede), the
subsequent search of Mr. Mota's plastic bag must still satisfy
the Fourth Amendment's reasonableness requirement.

7

front of him.  See Bond, 529 U.S. at 338.  The Westchester
County police officer who searched the van felt the outside of
the bag and thus "conduct[ed] a probing tactile examination"
sufficient to disclose the bag's contents.  Id. at 337.  The
"physical manipulation" of the bag violated the Fourth
Amendment.  Id. at 339.[3]

Independently, the police officer's physical manipulation
of Mr. Mota's bag was a Fourth Amendment search because it was a
trespass.  See, e.g., United States v. Jones, 132 S. Ct. 945,
950 n.3 (2012) ("Where, as here, the Government obtains
information by physically intruding on a constitutionally
protected area, ... a search has undoubtedly occurred.").  By
handling Mr. Mota's bag, the officer "physically occupied
private property for the purpose of obtaining information."  Id.
at 949.  That "physical intrusion would have been considered a
'search' within the meaning of the Fourth Amendment when it was
adopted," id. (citing Entick v. Carrington, 95 Eng. Rep. 807
(C.P. 1765)), and also fits within contemporary definitions of
trespass to chattels.  See, e.g., Restatement (2d) of Torts

---

[3] The Second Circuit has several times stated that passengers in
public conveyances have Fourth Amendment-protected privacy
interests in their carry-on bags.  See, e.g., Cassidy v.
Chertoff, 471 F.3d 67, 76-77 (2d Cir. 2006) (ferry passengers);
MacWade v. Kelly, 460 F.3d 260, 272-73 (2d Cir. 2006) (subway);
United States v. Perea, 986 F.2d 633, 642 (2d Cir. 1992) (taxi);
see also United States v. Bullock, 556 Fed. App'x 18, 19 (2d
Cir. 2014) (taxi).

§ 217(b) ("A trespass to a chattel may be committed by intentionally ... using or intermeddling with a chattel in the possession of another."); id. cmt. e ("'Intermeddling' means intentionally bringing about a physical contact with the chattel.  The actor may commit a trespass by an act which brings him into an intended physical contact with a chattel in the possession of another.").

B.   No Exception To The Warrant Requirement Applies.

A warrantless search of a person's effects "is 'per se unreasonable ... subject only to a few specifically established and well-delineated exceptions.'"  United States v. Perea, 986 F.2d 633, 639 (2d Cir. 1992) (quoting Mincey v. Arizona, 437 U.S. 385, 390 (1978)).  Once a defendant has established a reasonable expectation of privacy in the item searched, the government bears the burden of proving that an exception to the warrant requirement applies.  Id.

Mr. Mota anticipates that the government may argue that the warrantless search of his bag was justified because there was probable cause to believe that the bag contained contraband, see, e.g., California v. Acevedo, 500 U.S. 565, 580 (1991), or reasonable suspicion to believe that it contained a weapon, see, e.g., Michigan v. Long, 463 U.S. 1032, 1049 (1983).  Neither argument is persuasive.  As a factual matter, Mr. Mota disputes the officer's account of events and insists that he did not act

9

nervously, avoid eye contact, move around excessively, handle
the plastic bag, lean to the side, or drop the plastic bag.
Absent those factual allegations, there was no basis for any
search.  In any case, even as alleged by the government, the
facts fail to establish probable cause or reasonable suspicion.

1.   The officer lacked probable cause to believe that the bag
contained contraband.

     The police may conduct a warrantless search of a closed
container in an automobile "where they have probable cause to
believe contraband or evidence is contained."  <u>Acevedo</u>, 500 U.S.
at 580.  Probable cause to search "is demonstrated where the
totality of circumstances indicates a 'fair probability that
contraband or evidence of a crime will be found in a particular
place.'"  <u>Walczyk v. Rio</u>, 496 F.3d 139, 156 (2d Cir. 2007)
(quoting <u>Illinois v. Gates</u>, 462 U.S. 213, 238 (1984)).  The
government's generalized, conclusory, and ambiguous allegations
fall well short of that standard.  <u>See</u> 2 LaFave, Search &
Seizure § 3.6(d) (5th ed. 2014) (describing "cases in which the
officer sees a person engage in movements the officer interprets
as an attempt to hide 'something,' but the officer actually
never sees a suspicious object and does not otherwise reasonably
suspect the person possesses contraband," and admonishing that
"an inference that the occupant is in possession of contraband

10

he is endeavoring to hide should not be too hastily drawn in such circumstances").

For example, the government avers that couriers use livery vans to transport drugs from New York to Massachusetts.  E.g., Exh. F ¶ 8.  That allegation is far too general to support the search.  See, e.g., Chandler v. Miller, 520 U.S. 305, 313 (1997) ("To be reasonable under the Fourth Amendment, a search ordinarily must be based on individualized suspicion of wrongdoing.").  Dozens of companies operate hundreds of bus trips carrying thousands, perhaps tens of thousands, of passengers between New York and Massachusetts every day.  Travelers may take Greyhound, Peter Pan, GoBus, Megabus, Bolt Bus, Lucky Star Bus, or one of the many small operators, such as Five Stars Express, that cover this common route.  Indeed, Five Stars Express alone operates six trips per day in each direction.  At the time of the search, all that the officer knew was that the van in this case likely served a Latino and/or Dominican clientele (as evidenced by the "809 Express" logo), belonged to Five Stars Express, and was traveling between New York and Massachusetts.  See Exh. F ¶ 9(b) and (d).

In Reid v. Georgia, the Supreme Court rejected as insufficient to justify a Terry stop a drug courier profile that "describe[d] a very large category of presumably innocent travelers, who would be subject to virtually random seizures"

11

were the Court to embrace generalized profile evidence.   448
U.S. 438, 441 (1980) (per curiam).   Following Reid, the Second
Circuit has held that profile evidence very similar to that
proffered here was insufficient to establish probable cause to
justify a currency forfeiture.   United States v. $31,990 in
United States Currency, 982 F.2d 851, 855-56 (2d Cir. 1993)
(rejecting government's reliance on "the community of Dominican
drug dealers in Schenectady and the frequent use of the New York
State Thruway and gypsy cabs to transport money and drugs
between Schenectady and New York City").   See also, e.g., United
States v. Place, 660 F.2d 44, 49 (2d Cir. 1981) ("traveling from
a so-called 'source city,'" even in combination with other
factors, was "clearly not enough to constitute probable cause"),
aff'd, 462 U.S. 696 (1983).

In addition, the officer reports that Mr. Mota was acting
nervously, avoiding eye contact, and moving around in his seat.
Numerous cases find nervousness insufficient to justify the
belief that a suspect is engaged in drug trafficking.   See,
e.g., Florida v. Royer, 460 U.S. 491, 507 (1983); Place, 660
F.2d at 49; United States v. Buenaventura-Ariza, 615 F.2d 29, 35
(2d Cir. 1980); see also, e.g., United States v. Jackson, 2015
WL 4557401, at *10 (S.D.N.Y. July 29, 2015) (JPO) (noting that
"nervousness is of limited significance" in determining

probability of criminal conduct and collecting cases so holding).

So too the government's allegation that Mr. Mota was avoiding eye contact.  Mr. Mota was not the target of the stop. He was seated four rows (and some 20 feet, <u>see</u> Habib Decl. ¶ 10) away from the driver's side window and was not being questioned. From the vantage point of an objectively reasonable officer, there was no reason for any individual passenger to look at him as opposed to another passenger, a paperback book or magazine, the other officers arriving on the scene, passing traffic, the scenery outside, or anything else that might divert a bus traveler's attention during a long drive.  <u>See, e.g.</u>, <u>United States v. Parker</u>, 1999 WL 997282, at *5-6 (E.D.N.Y. Oct. 18, 1999) (JG) (fact that livery cab passenger "looked away" when he met police officer's gaze was "meaningless" in reasonable suspicion analysis); <u>see also, e.g.</u>, <u>United States v. Williams</u>, 731 F.3d 678, 687 (7th Cir. 2013) ("Most people, when confronted by a police officer, are likely to act nervous, avoid eye contact, and even potentially shift their bodies as if to move away from the area, thus making such behaviors of very little import to a reasonable suspicion determination."); <u>United States v. Halls</u>, 40 F.3d 275, 276 (8th Cir. 1994); <u>Gonzalez-Rivera v. INS</u>, 22 F.3d 1441, 1446-47 (9th Cir. 1994) <u>United States v. Lopez</u>, 564 F.2d 710, 712 (5th Cir. 1977) (all rejecting failure

to make eye contact with police as basis for reasonable suspicion sufficient to justify vehicle stop).  Nor would it be objectively unusual or suspicious for a passenger on such a drive to move around in an empty row of seats to stretch.

The officer's allegation that he saw Mr. Mota lean to the side and heard a "distinct thump" fares no better.  If true, all those observations show is that Mr. Mota or someone sitting near him dropped something, perhaps accidentally.  Nothing about the thump suggests that the item dropped was contraband or evidence of a crime, as opposed to an innocuous piece of carry-on property.  See, e.g., United States v. Thomas, 211 F.3d 1186, 1191-92 (9th Cir. 2000) (officer's claim "that the thumps were the distinct sound of marijuana bales was, at best, a hunch or mere conjecture, not an objective and reasonable inference").

2.   The officer lacked reasonable suspicion to believe that the bag contained a weapon.

During a lawful vehicle stop, police "may ... conduct a Terry patdown of the passenger compartment of a vehicle upon reasonable suspicion that an occupant is dangerous and may gain immediate control of a weapon." Knowles v. Iowa, 525 U.S. 113, 118 (1998) (citing Long, 463 U.S. at 1049).  Such a Terry patdown, "limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts

14

which, taken together with the rational inferences from those facts, reasonably warrant' the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." Long, 463 U.S. at 1049 (quoting Terry v. Ohio, 392 U.S. 1, 21 (1968)).

That exception is unavailable here.  As discussed above, the police lacked cause to believe Mr. Mota's bag contained any contraband, let alone a dangerous weapon.  Nothing about the traffic violation alleged (a broken rear tail light) indicates the possibility of a weapon in the van.  The stop occurred on a well-traveled highway on a weekday afternoon.  The government does not allege that livery van passengers are routinely armed, or that anything about Mr. Mota's appearance or conduct (for example, a bulge in his clothing or a movement to his waistband) suggested the presence of a weapon.  And there was nothing distinctive about the "thump" (for example, a metallic sound) to indicate that a weapon was involved.  Under these circumstances, nothing but the officer's conclusory assertion that he feared Mr. Mota might be concealing a weapon supports the physical investigation of the plastic bag.  See, e.g., United States v. McCraney, 674 F.3d 614, 620-21 (6th Cir. 2012) (no reasonable suspicion for Terry patdown even though car's occupants leaned forward toward floor of car while police were following them).

And of course, there was no immediate danger to anyone because all of the passengers, including Mr. Mota, had exited the van.

## II.  Mr. Mota's Post-Arrest Statement Must Be Suppressed As Fruit Of The Unlawful Search.

The exclusionary rule applies to evidence obtained as both a direct and an indirect result of an unlawful search.  Wong Sun v. United States, 371 U.S. 471, 484-85 (1963).  Because the search of Mr. Mota's bag violated the Fourth Amendment, his post-arrest statement must be suppressed as derivative of the initial unlawful search, that is, as "fruit of the poisonous tree."  Segura v. United States, 468 U.S. 796, 804 (1984).  "[T]o determine whether evidence is a fruit of a poisonous tree, a court must determine whether the government acquired the evidence by exploiting the illegal search or rather by a means sufficiently distinguishable from that search."  United States v. Trzaska, 111 F.3d 1019, 1027 (2d Cir. 1997).  Once the defendant establishes the unlawfulness of the initial search and a nexus between that illegality and after-acquired evidence, the burden of showing admissibility of derivative evidence rests with the government.  Id.; United States v. Hall, 419 F. Supp. 2d 279, 289-90 (E.D.N.Y. 2005).

Here, the relationship between the unlawful search and Mr. Mota's post-arrest statement is tight.  Mr. Mota was confronted with the heroin found inside the black plastic bag, asked where

it came from and who sent him to retrieve it.  <u>See</u> Exh. A ¶ 7; Exh. D, at MOTA_00027 to MOTA_00030; Exh. F ¶¶ 10-11.  No intervening event "broke the connection" between the search, the arrest, and the post-arrest statement two hours later.  <u>See</u> <u>Dunaway v. New York</u>, 442 U.S. 200. 218-19 (1979).  Although Mr. Mota received a <u>Miranda</u> warning, that is not dispositive.  <u>See,</u> <u>e.g.,</u> <u>Brown v. Illinois</u>, 422 U.S. 590, 601-03 (1975) (suppressing statement made two hours after unlawful arrest despite issuance of <u>Miranda</u> warnings).  An unbroken causal chain connects the unconstitutional search with the post-arrest statement, and the former taints the latter.

**CONCLUSION**

For the reasons stated, this Court should grant Mr. Mota's motion to suppress the physical evidence recovered from the bus and his statement.  In the alternative, this Court should grant an evidentiary hearing to resolve any factual disputes.  <u>See United States v. Pena</u>, 961 F.2d 333, 339 (2d Cir. 1992) (requiring hearing where defendant raises a "sufficiently definite, specific, detailed, and nonconjectural" factual basis for suppression).  Mr. Mota respectfully requests the opportunity to submit additional legal briefing following a hearing, if necessary.


Dated:     New York, New York
           August 10, 2015

                              Respectfully submitted,
                              Federal Defenders of New York

                              <u>/s/ Daniel Habib, Esq.</u>
                              Daniel Habib, Esq.
                              Sabrina Shroff, Esq.
                              Attorneys for Defendant
                                 **Marcos Mota**
                              52 Duane Street - 10th Floor
                              New York, NY 10007
                              Tel.: (212) 417-8769

18